## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

WATIKA DALTON, ET AL.                          CIVIL ACTION

VERSUS

MIKE CAZES, ET AL.                             NO. 19-00578-BAJ-RLB

### RULING AND ORDER

Before the Court is Defendants Mike Cazes, Vance Matranga, Brett Cavaliere, James Woody, Thomas Carpenter, and Glen Hanagan's **Motion For Partial Summary Judgment (Doc. 59).** The Motion is unopposed. For the following reasons, the Motion is **GRANTED**.

### I.     BACKGROUND

This case involves two consolidated actions arising out of law enforcement agents' alleged excessive force, which resulted in the shooting and killing of unarmed Josef Richardson. (Doc. 21; *see also* Doc. 1, Case No. 20-00479-BAJ-RLB).

On September 3, 2019, Plaintiffs Jamestaveus Bateaste and Watika Dalton, on behalf of her minor children, filed suit concerning the alleged use of force on Richardson. (Doc. 1).[1] On July 22, 2020, Plaintiff Jessica Clouatre, an eyewitness to the alleged force used on Richardson, filed suit addressing the harm she allegedly suffered from the event. (Doc. 1, Case No. 20-00479-BAJ-RLB). On December 15, 2020, the Court consolidated the two cases. (Doc. 28).

Plaintiffs collectively allege that on July 25, 2019, West Baton Rouge Sheriff's

---

[1] Document citations that do not include a reference to the case number are located in Case No. 19-00578-BAJ-RLB.

Office ("WBRSO") deputies executed a "no knock" warrant of "room number 5" at Budget 7 Motel, located at 1534 U.S. 190, Port Allen, LA 70767, where both Richardson and Clouatre were residing. (Doc. 21 ¶ 9). Plaintiffs allege that although Richardson was complying with officers' commands, WBRSO officers shot Richardson in the back of the head, causing his death. (*Id.* ¶¶ 23–24). The West Baton Rouge Parish ("WBR Parish") Coroner ruled Richardson's death a homicide. (*Id.* ¶ 25). Plaintiffs allege that there was no legal cause to justify the use of force against Richardson, such that the force was unreasonable and excessive. (*Id.* ¶ 29).

Plaintiff Clouatre alleges that she was an eyewitness to this incident, as she was sharing the hotel room with Richardson. (Doc. 1 ¶ 24, Case No. 20-00479-BAJ-RLB). Clouatre alleges that WBRSO officers pointed drawn guns at her, took her into custody, and placed her under arrest immediately after shooting Richardson. (*Id.* ¶ 28). Clouatre alleges that the WBRSO officers' actions were in willful, reckless, and callous disregard for her safety. (*Id.* ¶ 30). Clouatre alleges that she suffered severe emotional harm, fear, and intimidation as a result of her false arrest and prosecution. (*See generally id.*).

In this lawsuit, Clouatre asserts the following claims against Defendants:

(1) Federal constitutional claims against all Defendants, including excessive force, false arrest, conspiracy to arrest, and malicious prosecution (Count One);

(2) Federal constitutional claims against Cazes and WBRSO arising out of their alleged failure to train or supervise and failure to correct unconstitutional policies, practices, patterns, or customs (Count Two);

2

(3) Federal constitutional claims against WBR Parish arising out of its alleged encouragement, tolerance, and ratification of policies, patterns, practices, or customs causing harm to Plaintiff (Count Three);

(4) State law claims against Defendants Cavaliere, Matranga, Cazes, WBRSO, and WBR Parish (Count Four).

(*Id.*).

Bateaste and Dalton assert the following similar claims arising out of the force allegedly used on Richardson:

(1) Excessive force claim against Cavaliere, Matranga, and Cazes (Count One);

(2) Federal constitutional claim against Cazes and WBRSO arising out of their alleged failure to train or supervise and failure to correct unconstitutional policies, practices, patterns, or customs (Count Two);

(3) Federal constitutional claim against WBR Parish arising out of its alleged encouragement, tolerance, and ratification of policies, patterns, practices, or customs causing harm to Plaintiffs (Count Three);

(4) State law claims against Cavaliere, Matranga, Cazes, WBRSO, and WBR Parish (Count Four).

(Doc. 1).

Now, Defendants move for partial summary judgment, asking the Court to grant summary judgment in their favor and dismiss the following claims: (1) all of Clouatre's claims; (2) Bateaste and Dalton's official capacity claims against all Defendants; and (3) Bateaste and Dalton's individual capacity claim against Cazes.

3

(Doc. 59).

Under Local Civil Rule 56(f), facts contained in a supporting statement of material facts, if supported by record citations, shall be deemed admitted unless properly controverted. Here, no party has filed an Opposing Statement of Material Facts. Accordingly, the facts provided in Defendants' Statement of Undisputed Facts are deemed admitted for purposes of summary judgment. (Doc. 59-2). Defendants' Statement of Undisputed Facts provides as follows:

Jessica Clouatre was indicted by a grand jury on or about August 11, 2020. (Doc. 59-2 ¶ 1). On December 12, 2023, Clouatre pled guilty to possession of marijuana in an amount less than 14 grams. (*Id.* ¶ 2). Clouatre was not assaulted, beaten, hit, struck, or physically injured by any Defendants during the course of her arrest. (*Id.* ¶ 3). After the shooting of Richardson, deputies held Clouatre at gunpoint only as long as it took to place her into restraints, and weapons were not pointed at her at any point after that. (*Id.* ¶ 4).

Cazes was not present at the scene of the shooting nor was he involved in the operation in any way. (*Id.* ¶ 5).

For the following reasons, Defendants' Motion (Doc. 59) will be **GRANTED**.

## II.    LEGAL STANDARD

A district court should "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018) ("This occurs when a party

4

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

For issues on which the movant bears the burden of proof at trial, they "must come forward with evidence which would entitle [them] to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence establishing a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

Where the nonmovant bears the burden of proof at trial, the moving party must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the claim. *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 885 (1990). Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward evidence to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

## III.  DISCUSSION

In their Motion, Defendants ask the Court to grant summary judgment in their favor, dismissing all of Clouatre's claims. (Doc. 59-1 at 19). Defendants also ask the Court to dismiss Bateaste and Dalton's official capacity claims against all Defendants. Finally, Defendants ask the Court to dismiss Bateaste and Dalton's individual capacity claim against Cazes. (*Id.*). No party opposes Defendants' Motion.

The Court will address each request in turn, beginning with Clouatre's claims against Defendants.

### A.  Plaintiff Clouatre's Claims.

Defendants move for summary judgment on Clouatre's federal claims of false arrest, conspiracy to arrest, malicious prosecution, and excessive force against them. Defendants also move for summary judgment on Clouatre's state law claims of malicious prosecution, false imprisonment, battery, assault, and emotional distress against them. For the following reasons, and in light of Clouatre's failure to present contrary argument or evidence, Defendants' Motion will be **GRANTED**.

### i.  Clouatre's False Arrest and Conspiracy to Arrest Claims.

First, Defendants ask the Court to grant summary judgment in their favor on Clouatre's false arrest and conspiracy to arrest claims, arguing that these claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Clouatre does not oppose Defendants' request.

It is well settled under *Heck* that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of her constitutional rights if the

"violation arose from the same facts attendant to the charge for which [s]he was convicted, unless [s]he proves 'that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (citing *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006); *Heck*, 512 U.S. at 486–87).

> The United States Court of Appeals for the Fifth Circuit has emphasized:

> "[I]n order to prevail in a § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment." *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007). The Supreme Court, in *Heck*, observed that § 1983 unlawful-arrest claims fail in cases where "[a] state defendant is convicted of and sentenced for the crime of resisting arrest . . . [because] he would have to negate an element of the offense of which he has been convicted." 512 U.S. at 486 n. 6[;] *see also Wells v. Bonner*, 45 F.3d 90 (5th Cir. 1995) (explaining that the plaintiff's proof to establish his false arrest claim would demonstrate the invalidity of his conviction for resisting a search). ***Here, [plaintiff] was arrested for crimes for which he was ultimately convicted. Heck therefore bars recovery for his false arrest claim as well, because his convictions necessarily imply that there was probable cause for his arrest.***

*Ducksworth v. Rook*, 647 F. App'x 383, 386–87 (5th Cir. 2016) (emphasis added). The same result issues here.

The undisputed facts show that Clouatre was indicted by a grand jury on or about August 11, 2020, for the events arising out of the July 25, 2019 interaction with police. (Doc. 59-2 ¶ 1; Doc. 59-3). On December 12, 2023, Clouatre pled guilty to possession of marijuana in an amount less than 14 grams. (Doc. 59-2 ¶ 2; Doc. 59-4).

Thus, without any contrary evidence or argument from Clouatre, the Court is constrained to conclude that *Heck* bars recovery for Clouatre's false arrest and conspiracy to arrest claims because her guilty plea necessarily implies that there was probable cause for her arrest.[2] *See Ducksworth*, 647 F. App'x at 386–87.

Accordingly, Defendants' Motion for Partial Summary Judgment (Doc. 59) is **GRANTED** in this respect. Clouatre's false arrest and conspiracy to arrest claims against Defendants are **DISMISSED WITH PREJUDICE**.

---

[2] In reaching this conclusion, the Court echoes the concerns raised by other courts regarding the fairness of such a result, but is constrained by United States Supreme Court and Fifth Circuit precedent and by Clouatre's lack of evidence or argument opposing Defendants' Motion. *See Deemer v. Beard*, 557 F. App'x 162, 168 (3d Cir. 2014) (Rendell, J., concurring) ("A judgment in [plaintiff's] favor, post-release, would only vindicate his rights in the face of unlawful state action—serving the exact purpose of § 1983—not create the inconsistent result of continued incarceration and a favorable civil judgment."); *id.* ("Why should the former prisoner be denied even the opportunity for such vindication?"); *McNeal v. La. Dep't of Pub. Safety & Corr.*, No. CV 18-736-JWD-EWD, 2020 WL 798321, at *9 (M.D. La. Feb. 18, 2020) (deGravelles, J.) ("Applying *Heck* to those no longer incarcerated would render those rights, in Judge Bennet's words, "nothing more than a mirage – appearing to exist at first glance, but transforming into an illusion upon careful inspection due to the lack of a federal forum in which to enforce them.").

In this case, Clouatre pled guilty to "possession of marijuana less than 14 grams" in state court and was sentenced to serve eight days in parish jail. (Doc. 49-2). Although her eight-day sentence was relatively minor, the Court must now dismiss her current claims that, if supported by evidence, are quite serious.

Clouatre alleges that she witnessed officers intentionally shoot and kill unarmed and unresisting Richardson in the back of the head within seconds of entering the hotel room that she and Richardson shared to execute a "no knock" warrant. (Doc. 1 ¶¶ 23–29). Clouatre alleges that immediately after killing Richardson, officers held Clouatre at gunpoint to arrest her and take her into custody. (*Id.*). Thereafter, officers allegedly intimidated Clouatre in order to suppress her witness statement and to prevent the truth from being revealed. (*Id.* ¶ 42). Today, the Court dismisses those claims, in part because of Clouatre's lack of opposition to same, but questions the fairness of such a result. *See Deemer*, 557 F. App'x at 168 (Rendell, J., concurring) ("Given the scope and history of § 1983 as designed to redress constitutional violations, I think that fairness is a persuasive consideration.").

### ii.    Clouatre's Malicious Prosecution Claim.

Second, Defendants move for summary judgment on Clouatre's malicious prosecution claim against them, arguing that no federal malicious prosecution cause of action existed at the time of the 2019 incident. (Doc. 59-1 at 7). That aside, Defendants also argue that even if such a cause of action existed, Clouatre's malicious prosecution claim must fail because probable cause for an offense is an absolute bar to malicious prosecution. (*Id.* at 8). Again, Clouatre does not oppose Defendants' request.

Without deciding whether Clouatre had the right to pursue a malicious prosecution claim, the Court finds that any such claim must fail because Clouatre cannot establish the six elements of the claim as articulated by the Fifth Circuit: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was the defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages. *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023); *Wallace v. Taylor*, No. 22-20342, 2023 WL 2964418, at *6 (5th Cir. Apr. 14, 2023). In addition to proving each of these elements, plaintiffs must also prove "the threshold element of an unlawful Fourth Amendment seizure." *Armstrong*, 60 F.4th at 279. "[I]f the prosecution is supported by probable cause on at least one charge, then a malicious prosecution claim cannot move forward." *Id.* at n.15.

In the absence of any opposition from Clouatre, the Court finds that the

undisputed facts show that the criminal proceedings against Clouatre were resolved against her, not in her favor. Further, as described above, Clouatre's guilty plea necessarily implies that there was probable cause for her arrest. *See Ducksworth*, 647 F. App'x at 386–87. For these reasons, Clouatre's malicious prosecution claim must be dismissed.

Accordingly, Defendants' Motion for Partial Summary Judgment (Doc. 59) is **GRANTED** in this respect. Clouatre's malicious prosecution claim against Defendants is **DISMISSED WITH PREJUDICE**.

### iii.    Clouatre's Excessive Force Claim.

Third, Defendants move for summary judgment on Clouatre's excessive force claim against them, arguing that Plaintiff was not the subject of physical force on the date of the incident. (Doc. 59-1 at 9). Clouatre does not oppose Defendants' request.

It is a violation of the Fourth Amendment for an officer to use excessive or unreasonable force in the context of an arrest. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). To prevail on an excessive force claim, "[a] plaintiff must show (1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness . . . was clearly unreasonable." *Collie v. Barron*, 747 F. App'x. 950, 952 (5th Cir. 2018) (citations omitted). Excessiveness turns upon whether the degree of force used was reasonable in light of the totality of the circumstances facing the officer in each case. *Williams v. Sanders*, 723 F. Supp. 3d 467, 472 (M.D. La. 2024) (citing *Graham*, 490 U.S. at 396; *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

Here, the undisputed facts show that Clouatre was not injured by any Defendant during her arrest. (Doc. 59-2 ¶ 3). Because an excessive force claim requires Clouatre to show an injury, the undisputed facts show that she was not injured, and Clouatre has failed to set forth evidence to the contrary, her excessive force claim must fail.

Accordingly, Defendants' Motion for Partial Summary Judgment (Doc. 59) is **GRANTED** in this respect. Clouatre's excessive force claim against Defendants is **DISMISSED WITH PREJUDICE**.

### iv.    Clouatre's State Law Claims of Malicious Prosecution, False Imprisonment, Battery, Assault, and Emotional Distress.

Fourth, Defendants move for summary judgment on Clouatre's state law claims of malicious prosecution, false imprisonment, battery, assault, and emotional distress. Defendants argue that Clouatre cannot establish the essential elements of any of these claims for similar reasons previously discussed. (Doc. 59-1 at 12–14). Again, Clouatre does not oppose Defendants' request.

The Fifth Circuit has held:

> These torts—assault, abuse of process, intentional infliction of emotional distress, false arrest, false imprisonment, negligence, gross negligence, and other "intentional torts"—all stem from [plaintiff's] arrest. Louisiana applies the *Heck* rationale to state law tort claims. *Williams v. Harding*, 2012-1595 (La. App. 1 Cir. 4/26/13), 117 So. 3d 187, 191. As with the excessive force claim, so these state law claims imply the invalidity of the underlying conviction. Since [plaintiff] has failed to distinguish these torts from the factual basis for the battery conviction, they are inseparable and *Heck*-barred. *DeLeon*, 488 F.3d at 657.

*Price v. City of Bossier*, 841 F. App'x 650, 654 (5th Cir. 2021). Here, Clouatre has

similarly failed to distinguish these torts from the factual basis for her guilty plea. In the absence of any contrary evidence, argument, or jurisprudence from Clouatre, her state law claims must be dismissed.

Accordingly, Defendants' Motion for Partial Summary Judgment (Doc. 59) is **GRANTED** in this respect. Clouatre's state law claims of malicious prosecution, false imprisonment, battery, assault, and emotional distress against Defendants are **DISMISSED WITH PREJUDICE.**

### B. Plaintiffs Clouatre, Bateaste and Dalton's Claims Asserting Liability Under *Monell.*

Fifth, Defendants move for summary judgment on Plaintiffs Clouatre, Bateaste, and Dalton's claims asserting liability under *Monell*, arguing that Plaintiffs cannot produce evidence of any pattern or practice of excessive force, false arrest, or malicious prosecution. (Doc. 59-1 at 17). None of the Plaintiffs oppose Defendants' Motion.

Plaintiffs appear to assert two theories of liability against WBRSO under *Monell*: (1) policy liability; and (2) failure to train and supervise.[3] Plaintiffs also assert a claim of policy liability against WBR Parish.[4] The Court will analyze Plaintiffs' policy liability claim against WBRSO and WBR Parish and then turn to Plaintiffs' claim for failure to train or supervise against WBRSO.

---

[3] These allegations are contained in Counts Two of each Complaint.

[4] These allegations are contained in Counts Three of each Complaint.

### i.    Policy Liability Against WBRSO and WBR Parish.

There are three elements of municipal liability under Section 1983: "[A] plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks–Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017) (citations omitted), *cert. denied*, 583 U.S. 1014 (2017). The first policy prong "includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted); *Peterson v. City of Ft. Wor.*, 588 F.3d 838, 850–51 (5th Cir. 2009).

Here, Defendants point to a lack of evidence supporting the elements of Plaintiffs' claim. (Doc. 59-1 at 17). In response, Plaintiffs have presented no evidence of a policy or custom at issue and have offered no evidence showing that the policy or custom was the moving force behind the alleged violation of their constitutional rights. Because Plaintiffs have failed to offer evidence to establish the essential elements of their claims, summary judgment is warranted in Defendants' favor. *See Romain v. Governor's Off. of Homeland Sec.*, No. CV 14-660-SDD-RLB, 2016 WL 3982329, at *10 (M.D. La. July 22, 2016) ("The Court finds that [p]laintiff has presented insufficient summary judgment evidence to carry his burden of establishing that Sheriff Ard engaged in a widespread municipal policy of failing to train his officers or that any alleged failure to train or supervise was the direct cause of Plaintiff's alleged injuries.").

13

Accordingly, Defendants' Motion for Partial Summary Judgment (Doc. 59) is **GRANTED** in this respect. Plaintiffs' claims against WBRSO and WBR Parish asserting liability under *Monell* based on an alleged policy, practice, pattern, or custom are **DISMISSED WITH PREJUDICE**.

###         ii.      Failure to Train or Supervise Against WBRSO.

A *Monell* claim may be based on a municipality's alleged failure to train, supervise, or discipline employees. *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018). To state a claim for failing to supervise an employee, the plaintiff must allege "(1) that the municipality's training, supervisory, or disciplinary policies or practices were inadequate, (2) that the municipality was deliberately indifferent in adopting [these] deficient polic[ies], and (3) that the inadequate training, supervisory, or disciplinary polic[ies] directly caused the violations in question." *Hankins v. Wheeler*, 2022 WL 2208848, at *7 (E.D. La. June 21, 2022) (citing *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020)).

"Deliberate indifference" can be demonstrated in two ways: "[f]irst and most often, deliberate indifference generally requires notice of a pattern of similar violations at the time the plaintiff's own rights were violated . . . Second, [the Circuit] has noted that in narrow circumstances, when a constitutional violation results as the highly predictable consequence" of a municipality's failure to properly hire, train, supervise, or discipline, "the failure . . . can amount to deliberate indifference." *Robles v. Ciarletta*, 797 F. App'x 821, 833–34 (5th Cir. 2019).

As to the first method of showing deliberate indifference, the Fifth Circuit has

14

held that "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Livezey v. City of Malakoff*, 657 F. App'x 274, 278 (5th Cir. 2016) (internal quotation and citation omitted). Regarding the second method, the plaintiff must allege that the "highly predictable consequence of not supervising [the employees] was that they would" commit the specific constitutional violation alleged. *Peterson*, 588 F.3d at 850 (internal quotations omitted).

"An injury is 'highly predictable' where the municipality 'fails to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face.'" *Hankins*, 2022 WL 2208848, at *7 (internal brackets omitted) (quoting *Hutcheson v. Dall. Cnty.*, 994 F.3d 477, 482–83 (5th Cir. 2021)). To establish liability for failure to supervise, it "must have been obvious that the highly predictable consequence of not supervising [the employees] was that they would" commit the specific constitutional violation alleged. *Peterson*, 588 F.3d at 850 (internal quotations omitted); *see also Smith v. Thibodeaux*, No. 23-CV-461-SDD-RLB, 2024 WL 1335649, at *8 (M.D. La. Mar. 28, 2024).

Here, Plaintiffs have not offered evidence to show that WBRSO's training or supervisory practices were inadequate, much less that WBRSO was deliberately indifferent. Thus, Plaintiffs' claims against WBRSO for failure to train or supervise must be dismissed. *Romain*, 2016 WL 3982329, at *11 ("No evidence, argument, or jurisprudence has been offered regarding the 'supervision' portion of [p]laintiff's

15

failure to train/supervise claim, and [p]laintiff has failed to provide any specifics as to this theory of liability; thus, the Court finds that this claim as it relates to supervision is abandoned."); *id.* ("Furthermore, even if [p]laintiff had submitted evidence to create genuine material fact disputes on this issue, he fails to present summary judgment evidence of deliberate indifference, which also forecloses this claim.").

Accordingly, Defendants' Motion for Partial Summary Judgment (Doc. 59) is **GRANTED** in this respect. Plaintiffs' claims against WBRSO asserting liability under *Monell* based on failure to supervise or train are **DISMISSED WITH PREJUDICE**.

### C. Plaintiffs Clouatre, Bateaste, and Dalton's Official Capacity Claims against Matranga, Cavaliere, Woody, Carpenter, Henagan, and Cazes.

Defendants ask the Court to grant summary judgment in their favor on Plaintiffs' Section 1983 claims against Matranga, Cavaliere, Woody, Carpenter, Henagan, and Cazes in their official capacities.

"An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent. To determine whether a public official is liable in his official capacity, the Court looks to the jurisprudence discussing whether a municipality or local government entity is liable under section 1983." *Jordan v. Gautreaux*, 593 F. Supp. 3d 330, 353 (M.D. La. 2022) (citing *Romain*, 2016 WL 3982329, at *6 (citations and quotations omitted)). For the same reasons described regarding Plaintiffs' Section 1983 claims against WBRSO and WBR Parish, and in the absence

of any contrary evidence or argument from Plaintiffs, Plaintiffs' claims against Matranga, Cavaliere, Woody, Carpenter, Henagan, and Cazes, in their official capacities, must also be dismissed.

Accordingly, Defendants' Motion for Partial Summary Judgment (Doc. 59) is **GRANTED** in this respect. Plaintiffs' claims against Matranga, Cavaliere, Woody, Carpenter, Henagan, and Cazes in their official capacities are **DISMISSED WITH PREJUDICE**.

### D. Bateaste and Dalton's Individual Capacity Claim Against Cazes.

Finally, Defendants move for summary judgment on Bateaste and Dalton's individual capacity claim against Cazes, arguing that he was not present at the scene of the incident.

A valid individual capacity claim requires a Section 1983 plaintiff to "establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008). "Indeed, an officer must, in some way, personally deprive a Section 1983 plaintiff of his federal rights in order to incur liability in his individual capacity; respondeat superior liability is repugnant to the plain language of the statute." *La. Cleaning Sys. v. Brown*, No. CIV.A. 14-2853, 2015 WL 6869907, at *7 (W.D. La. Nov. 9, 2015).

Defendants present the Declaration of Matranga, attesting that Cazes was not present during the incident and had no involvement in same. (Doc. 59-1 at 18; Doc. 59-6 ¶ 2 ("At no time was Sheriff Mike Cazes present at the scene of the incident.

17

He was not involved in any way in the incident.")). Defendants argue that Plaintiff can produce no evidence to the contrary. Likewise, Defendants argue that Plaintiff can "point to no policy which is unconstitutional and which gave rise to the injury at issue[.]" (Doc. 59-1 at 18–19). Plaintiffs have failed to offer evidence to the contrary. Thus, Plaintiffs' individual capacity claim against Cazes must also be dismissed.

Accordingly, Defendants' Motion for Partial Summary Judgment (Doc. 59) is **GRANTED** in this respect. Plaintiffs Bateaste and Dalton's claim against Cazes in his individual capacity is **DISMISSED WITH PREJUDICE**.

IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' **Motion For Partial Summary Judgment (Doc. 59)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Jessica Clouatre's claims against all Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs Jamestaveus Bateaste and Watika Dalton's claims against WBR and WBRSO asserting liability arising under *Monell* are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs Jamestaveus Bateaste and Watika Dalton's claims against Matranga, Cavaliere, Woody, Carpenter, Henagan, and Cazes in their official capacities are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs Jamestaveus Bateaste and Watika Dalton's claim against Cazes in his individual capacity is **DISMISSED WITH PREJUDICE.**

Baton Rouge, Louisiana, this 30th day of March, 2026

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**